IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEBRA RUBERTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-874-WKW |
| | ) | [WO] |
| ETHICON, INC. and JOHNSON & | ) | |
| JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' motions *in limine* (Docs. # 145–58) and

Plaintiff's responses (Doc. # 177).[1]  For the reasons discussed below, Defendants'

motions are GRANTED in part, DENIED in part, and DEFERRED in part.[2]

### I.  Defendants' First Motion

In their first motion *in limine*, Defendants seek to exclude various company

documents that they argue are irrelevant and unfairly prejudicial.  (Doc. # 145 at 1.)

The court analyzes each document separately.

---

[1] All citations use the pagination as designated by the CM/ECF filing system.

[2] As emphasized at the status conference held on November 1, 2022 (Doc. # 174), where other courts have already examined similar motions *in limine*, such prior examination will be viewed as persuasive.

A. <u>Company Emails</u>

Defendants seek to exclude two emails between Defendants' personnel because the information contained therein is irrelevant, is unduly prejudicial, and is inadmissible as double hearsay.  (Doc. # 145 at 1–2.)  These objections are not valid.  The information contained in these emails is relevant because it makes it more likely than not that Defendants had some knowledge or were aware of the health risks associated with the TVT-O (here, particularly, dyspareunia) and had some knowledge or were aware that the mesh used was defective.  Fed. R. Evid. 401.

These emails are not unduly prejudicial to Defendants.  Fed. R. Evid. 403.  All "[r]elevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of [a] relevant matter under Rule 403."  *Cauchon v. United States*, 824 F.2d 908, 914 (11th Cir. 1987) (emphasis in original) (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)).  "Unfair prejudice cannot be simplistically defined as evidence having adverse effects on a party's case; rather, it is an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one."  *Id.* (alteration in original) (quotations omitted) (quoting *United States v. Grassi*, 602 F.2d 1192, 1197 (5th Cir.1979)).  Defendants have not effectively argued that this evidence is unduly prejudicial, beyond the normal prejudice inherent in relevant evidence.

Finally, these emails are not excludable as hearsay, double or otherwise.  The first email chain (Doc. # 177-1) is not offered for the truth of the matter asserted and so is not hearsay.  Fed. R. Evid. 801(c).  In addition, even if it were offered for its truth, the statements were made by Defendants' employees and are thus statements of an opposing party and not hearsay.  Fed. R. Evid. 801(d)(2)(D).  The second email chain (Doc. # 177-2) is also not hearsay since the statements were made by Defendants' employees.  Fed. R. Evid. 801(d)(2)(D).  For these reasons, Defendants' motion to exclude these emails is DENIED.

## B.  Correspondence from Dr. Eberhard

Defendants also seek to exclude a letter from Dr. Jakob Eberhard "regarding a 'demo unit' for TVT" and how it crumbled during demonstrations as irrelevant, unfairly prejudicial, and hearsay.  (Doc. # 145 at 2–4.)  This letter about a "demo unit" of a different product from the device implanted in Plaintiff, the TVT-O, is of dubious relevance.  Discussion of a "demo unit" that has been handled by who knows how many hands is unlikely to make any fact more or less likely.  Fed. R. Evid. 401. Defendants' motion to exclude Dr. Eberhard's letter is GRANTED.

## C.  2002 Email Chain Between Dr. Arnaud and Dr. Weisberg

Defendants seek to exclude an email chain between Dr. Axel Arnaud and Dr. Martin Weisberg regarding Prolene Soft mesh.  (Doc. # 145 at 4–5.)  In this email chain, the doctors discuss complications that arise from the use of this mesh,

including "Fistula&Erosions."  (Doc. # 177-3 at 2–4.)  Defendants argue that this exchange is "wholly irrelevant" to Plaintiff's suit, would mislead the jury, and "unfairly prejudice Defendants."  (Doc. # 145 at 4–5.)  However, in the email exchange, Dr. Arnaud says that the potential complications associated with Prolene Soft mesh "arise[] rather commonly in practice even with polypropylene and it might be wise to be more elusive on this."  (Doc. # 177-3 at 2.)  Assuming that the same polypropylene is used in the TVT-O, this statement is relevant because it tends to show that Defendants were aware of or had notice of complications with the mesh. Fed. R. Evid. 401.  And there is no reason to think it is unfairly prejudicial.  Fed. R. Evid. 403.  Defendants' motion to exclude the email chain between Dr. Arnaud and Dr. Weisberg is DENIED.

D. December 2008 and January 2009 Email Chains Involving Dr. Chen

Defendants seek to exclude email chains between Ethicon's Medical Director Dr. Meng Chen and two of Defendants' other employees.  (Doc. # 145 at 5–6.)  In the December 2008 email chain, Dr. Chen mentions that the "Potential Adverse Reactions" section of the IFU [Instructions for Use] for the TVT family of products (including the TVT-O) should be updated.  (Doc. # 177-4 at 2.)  In the January 2009 email chain, Dr. Chen says that, in her experience, the side effects from the TVT products (including the TVT-O) "are not 'transitory' at all" (Doc. # 177-5 at 2).  One of Plaintiff's claims against Defendants is failure to warn (Doc. # 1 at 4), so

4

Defendants' employees noting deficiencies with product warnings and the risks associated with those products is relevant since it makes it more likely than not that Defendants failed to warn.  Fed. R. Evid. 401.  As a result, Defendants' motion to exclude these email chains involving Dr. Chen is DENIED.

E.  Brian Luscombe's Internal Marketing Presentation

Defendants seek to exclude a PowerPoint presentation prepared by one of their employees, Brian Luscombe.  (Doc. # 145 at 6–8.)  The presentation, titled "Top Ten Reason[s] to Pursue . . . GYNECARE TVT Obturator System" (Doc. # 177-6) was, according to Defendants, designed to be a parody of "David Letterman's 'Top Ten list' skit," "an 'ice breaker' for an Ethicon sales force meeting" that "was not a substantive presentation about the safety and efficacy of the product." (Doc. # 145 at 6–7.)  This presentation, according to Defendants, would be irrelevant and unfairly prejudicial.  (Doc. # 145 at 7.)  In two cases, the Multi-District Litigation (MDL) court—the United States District Court for the Southern District of West Virginia—held that this "presentation is a poor attempt at humor.  It is not probative to any claims in this case.  Even if it were probative, I would exclude it under Rule 403 for its risk of unfair prejudice and its potential to waste time in trial." *Huskey v. Ethicon, Inc.*, No. 2:12-CV-5201, 2014 WL 3861778, at *3 (S.D.W. Va. Aug. 6, 2014); *Edwards v. Ethicon, Inc.*, No. 2:12-CV-9972, 2014 WL 3882186, at *4 (S.D.W. Va. Aug. 7, 2014).  Plaintiff does not offer any persuasive argument to the

contrary. Defendants' motion to exclude Brian Luscombe's presentation is GRANTED.

F. PA Consulting Group Report

Defendants seek to exclude a 2011 report prepared by PA Consulting Group titled "Investigating Mesh Erosion in Pelvic Floor Repair" (the Report) because they argue it is not relevant and it is unfairly prejudicial. (Doc. # 145 at 8.) Defendants assert that the Report is irrelevant because it was "for the investigation of a new pelvic organ prolapse product" (not TVT-O), "references multiple products that are not at issue," and the "discussion of mesh degradation . . . relates to polypropylene generally, rather than the Prolene used to make TVT-O." (Doc. # 145 at 8.)

The MDL court previously faced the identical argument from Defendants and found it lacking:

> Ethicon's arguments are misleading. . . . The [R]eport does not state anywhere that it was examining erosion only as it relates to pelvic organ prolapse; rather, it discusses mesh erosion generally, in line with the broad analysis requested by Ethicon. Although the overall purpose of the report may have been to aid Ethicon in developing a next-generation device for pelvic organ prolapse, its discussion of general mesh erosion is relevant to the plaintiffs' claims. It also contains erosion rates of mesh, which have probative value.

*In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, Nos. 2:12-MD-2327, 2:12-CV-4301, 2014 WL 505234, at *11 (S.D.W. Va. Feb. 5, 2014) (*Lewis*); *Huskey*, 2014 WL 3861778, at *4. That reasoning applies with equal force here. Defendants' motion to exclude the Report is DENIED.

6

G. Evidence of Payments Between Medscand and J&J International

Defendants seek to exclude "any reference to or admission of evidence concerning any 'milestone payments' made under a 1997 License and Supply Agreement between Medscand Medical, A.B. and Johnson & Johnson International." (Doc. # 145 at 9.) Part of the contract "called for 'milestone payments' totaling $400,000, payable to Dr. [Ulf] Ulmsten at specified stages in the development of the product." (Doc. # 145 at 9.)

Defendants assert that this evidence should be excluded because "Plaintiff *may* offer this evidence to suggest that Ethicon somehow manipulated the TVT development process by paying the developer to generate favorable data." (Doc. # 145 at 9 (emphasis added).) Complaining about something that opposing counsel *may* do is not a sufficient ground to exclude this evidence. And, as the MDL court held, evidence of Defendants paying experts who completed favorable studies of Defendants' products "is relevant to the authors' potential bias." *Lewis*, 2014 WL 505234, at *10. Plaintiff should not be excluded from offering evidence of payments between Medscand and J&J International. Defendants' motion to exclude evidence of (or reference to) these payments is DENIED.

H. Hernia Mesh Marketing Video

Defendants seek to exclude a video featuring Dr. Todd Heniford, a hernia surgeon, in which he "discusses certain attributes of 'heavyweight' hernia meshes,

along with the historical use of polypropylene mesh in hernia repair and the development of lighter-weight meshes for use in the abdomen." (Doc. # 145 at 10.) Defendants argue that this video should be excluded because it is irrelevant (because it is "about an entirely different product, made of a different mesh material, used for an entirely different purpose, in an entirely different part of the body"), is unfairly prejudicial, and runs the risk of "misleading the jury." (Doc. # 145 at 11–12.) Defendants' motion is DENIED to the extent that this video may be used for impeachment of Dr. Heniford at trial, but it is GRANTED in every other respect.

## II. Defendants' Second Motion

In their second motion *in limine*, Defendants seek to exclude "evidence of other lawsuits involving pelvic mesh devices, as well as lawsuits involving unrelated products manufactured by Johnson & Johnson companies, including other medical devices, drugs, and cosmetic products" because such evidence is "irrelevant, unfairly prejudicial, and inadmissible hearsay." (Doc. # 146 at 1.) Plaintiff responds that this evidence is relevant for "the elements of [her] substantive claims to show, for example, knowledge and notice of danger, scope of the risk of harm, lack of safety, or causation." (Doc. # 177 at 10.)

While "evidence of similar accidents may be admissible" (for example, to show that Defendants had knowledge or notice of the TVT-O's defectiveness), "evidence of lawsuits is generally considered inadmissible hearsay." *Lewis*, 2014

WL 505234, at *5–6; *Salinero v. Johnson & Johnson*, No. 1:18-CV-23643-UU, 2019 WL 7753445, at *3 (S.D. Fla. Sept. 25, 2019) ("[I]f Plaintiffs were to use the existence of other claims or complaints as proof that other women suffered complications from pelvic mesh products, such evidence would be inadmissible hearsay.").

And even if it was not hearsay, generally "evidence of other lawsuits and the factual allegations therein is inadmissible under Rule 403" because "[a]lthough other lawsuits may ultimately show that the [TVT-O] is defective, the jury must still find that the [TVT-O] caused [Plaintiff's] injuries." *Lewis*, 2014 WL 505234, at *6. "Evidence of other lawsuits is likely to confuse and mislead the jury from that task, and it is highly prejudicial to" Defendants. *Id.*; *see Salinero*, 2019 WL 7753445, at *2; *Smith v. E-backgroundchecks.com, Inc.*, No. 1:13-CV-02658-RGV, 2015 WL 11233453, at *1–2 (N.D. Ga. June 4, 2015).

But Plaintiff also argues that "the existence of and evidence related to the tens of thousands of lawsuits filed against Defendants for injuries similar to Plaintiff's should be allowed to rebut" Defendants' assertions that the TVT-O has been implanted "in millions of women and that the complications associated with the device are rare." (Doc. # 177 at 10.)  Should Defendants advance this line of argument, in fairness Plaintiff should be allowed to rebut it.  Ruling is reserved on this discrete rebuttal issue.

Based on these considerations, Defendants' second motion *in limine* is GRANTED in part and RESERVED in part.

## III. Defendants' Third Motion

In their third motion *in limine*, Defendants seek to exclude evidence of changes made to the IFU and patient brochures for the TVT-O after Plaintiff's 2012 implant surgery because such evidence "is inadmissible under" Federal Rule of Evidence 407, "is irrelevant to Defendants' duty to warn under Alabama law, and would be unfairly prejudicial to Defendants if admitted." (Doc. # 147 at 1.)

The Eleventh Circuit has indicated that labeling of medical devices that occurs after the event in question is a subsequent remedial measure under Federal Rule of Evidence 407 and is inadmissible. Fed. R. Evid. 407; *see Horrillo v. Cook Inc.*, 664 F. App'x 874, 877 (11th Cir. 2016). Plaintiffs concede that "any changes that have been made to the warnings since Plaintiff's implant procedure . . . are likely to be deemed as inadmissible subsequent remedial measures under federal law and in accordance with the Federal Rules of Evidence." (Doc. # 177 at 10.) As a result, Plaintiff does not plan to use this evidence "in her case-in-chief." (Doc. # 177 at 10.) But she requests leave of the court "to admi[t] . . . such evidence" if "Defendants open the door" at trial. (Doc. # 177 at 10.)

To the extent Plaintiff will use evidence of changes to the IFU and patient

brochures in her case-in-chief, Defendants' third motion *in limine* is GRANTED.  It is otherwise DENIED.

## IV.  Defendants' Fourth Motion

In their fourth motion *in limine*, Defendants seek to exclude evidence about "Ethicon's Prolift and Prolift+M devices, which are designed to treat a completely different condition—pelvic organ prolapse"—than Plaintiff's condition—stress urinary incontinence.  (Doc. # 148 at 1.)  "Prolapse products are different from TVT-O in several important ways that make them irrelevant to Plaintiff's claims."  (Doc. # 148 at 1.)  Plaintiff argues that this evidence is relevant because the prolapse products are "substantially similar to the TVT-O"; "the evidence can show Defendants' notice of problems with the heavyweight, small pore mesh used in the TVT-O"; and "evidence relating to the materials used in" the prolapse devices "is relevant to assist the jury in assessing possible alternative designs for the TVT-O."  (Doc. # 177 at 11.)  Defendants' fourth motion *in limine* is GRANTED.  Neither party will be allowed to offer evidence regarding devices used for the treatment of pelvic organ prolapse.

## V.  Defendants' Fifth Motion

In their fifth motion *in limine*, Defendants seek to exclude all "medical device reports" (MDRs) that discuss the "TVT-O or other pelvic mesh devices."  (Doc. # 149 at 3.)  MDRs are mandated by statute:

**(a) General rule**

Every person who is a manufacturer or importer of a device intended for human use shall establish and maintain such records, make such reports, and provide such information, as the Secretary [of the Food and Drug Administration (FDA)] may by regulation reasonably require to assure that such device is not adulterated or misbranded and to otherwise assure its safety and effectiveness. Regulations prescribed under the preceding sentence –

**(1)** shall require a device manufacturer or importer to report to the Secretary whenever the manufacturer or importer receives or otherwise becomes aware of information that reasonably suggests that one of its marketed devices –

**(A)** may have caused or contributed to a death or serious injury, or

**(B)** has malfunctioned and that such device or a similar device marketed by the manufacturer or importer would be likely to cause or contribute to a death or serious injury if the malfunction were to recur[.]

21 U.S.C. § 360i(a)(1).  In addition to companies who manufacture or import devices, "device user facilit[ies]" that "receive[] or otherwise become[] aware of information that reasonably suggests that a device has or may have caused or contributed to the death of a patient of the facility . . . shall, as soon as practicable[,] . . . report the information to the Secretary and, if the identity of the manufacturer is known, to the manufacturer of the device." 21 U.S.C. § 360i(b)(1)(A).

Per the statute, "'device user facility' means a hospital, ambulatory surgical facility, nursing home, or outpatient treatment facility which is not a physician's office." 21 U.S.C. § 360i(b)(6)(A).  No report made by a device user facility, "an individual who is employed by or otherwise formally affiliated with such a facility," or "a physician who is not required to make . . . a report" pursuant to 21 U.S.C. § 360i(b)(1)(A) can be admitted "into evidence or otherwise used in any civil action

. . . unless the facility, individual, or physician who made the report had knowledge of the falsity of the information contained in the report."  21 U.S.C. § 360i(b)(3).

So, in general, evidence pertaining to MDRs submitted by a "device user facility" or associated individuals, is not admissible.  But the issue for Defendants is that there is no reason to think that other MDRs (like those submitted by manufacturers) are excludable.  Indeed, other courts have held that such MDRs are not excludable.  *See Lewis*, 2014 WL 505234, at *5 ("MDRs are inadmissible to the extent that they are covered under 21 U.S.C. § 360i(b)(3).  However, there are MDRs that do not fall within the scope of § 360i and are therefore admissible."); *Chism v. Ethicon Endo-Surgery, Inc.*, No. 4:08-CV-341-WRW, 2009 WL 3066679, at *1 (E.D. Ark. Sept. 23, 2009) ("Although device user facilities report to manufacturers, who then base their reports to the FDA on the user reports, § 360i does not prohibit the admissibility of manufacturer reports into evidence, or other uses of the reports in civil actions.").

"[T]here are simply too many factors that might determine whether product complaints . . . and MDRs might be admissible."  *Lewis*, 2014 WL 505234, at *5 (quoting *In re C.R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:10-CV-1224, 2013 WL 3282926, at *6 (S.D.W. Va. June 27, 2013), *on reconsideration in part sub nom. In re C.R. Bard, Inc.*, No. 2:10-CV-1224, 2013 WL 11089794 (S.D.W. Va. July 1, 2013), and *aff'd in part, rev'd in part sub nom. In re C.R. Bard, Inc.,*

*MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913 (4th Cir. 2016)). "Without knowing the contents of the specific MDRs at issue or how the parties intend to use them," it is not possible to rule on the admissibility of the non-"device user facility" MDRs at this time.  *Lewis*, 2014 WL 505234, at *5.  Defendants' motion to exclude MDRs is GRANTED to the extent it seeks to exclude those submitted according to 21 U.S.C. § 360i(b)(1)(A).   In all other respects, it is DENIED.

## VI.  Defendants' Sixth Motion

In their sixth motion *in limine*, Defendants seek to exclude "Material Safety Data Sheets" (MSDSs) related to "raw polypropylene" since such evidence is irrelevant to Plaintiff's claims.  (Doc. # 150 at 1.)  According to Defendants, MSDSs are prepared according to Occupational and Safety Health Administration (OSHA) regulations to "identify health and safety hazards that workers may be exposed to when handling" certain chemicals and raw materials.  (Doc. # 150 at 1.)  According to Defendants, the material used in the TVT-O, Prolene, is not "raw polypropylene" but "a polypropylene-based compound which contains antioxidants and other additives."  (Doc. # 150 at 1.)  Defendants' sixth motion *in limine* is GRANTED.

## VII.  Defendants' Seventh Motion

In their seventh motion *in limine*, Defendants seek to exclude evidence regarding "ProteGen" which "was a pelvic mesh incontinence sling manufactured

by Boston Scientific" and which Defendants identified as a "predicate device in [their] FDA 510(k) application for TVT." (Doc. # 151 at 1–2.) Defendants argue that evidence regarding ProteGen is irrelevant because of the many differences between it and the TVT-O. (Doc. # 151 at 1–3.) Plaintiff does not plan to introduce evidence regarding ProteGen in her case-in-chief. (Doc. # 177 at 15.) However, Plaintiff argues that evidence regarding ProteGen should not be excluded in case Defendants put it in issue at trial. (Doc. # 177 at 15–16.) Ruling on Defendants' seventh motion *in limine* is RESERVED for trial.

## VIII.  Defendants' Eighth Motion

In their eighth motion *in limine*, Defendants seek to prevent Plaintiff from arguing that Defendants "'rushed' TVT-O to market without adequate testing by relying on company documents that discuss the product's accelerated development scheduled." (Doc. # 152 at 1.) Plaintiff responds that she does not plan to offer evidence in her case-in-chief that the TVT-O was rushed, but requests that this evidence not be excluded in case Defendants "open the door" at trial. (Doc. # 177 at 17.) A ruling on Defendants' eighth motion *in limine* is RESERVED for trial.

## IX.  Defendants' Ninth Motion

In their ninth motion *in limine*, Defendants seek to prevent Plaintiff "from offering evidence of foreign regulatory issues involving pelvic mesh products, such as foreign regulations, actions taken by foreign regulatory agencies, foreign labeling

requirements, and documents generated by Defendants to comply with foreign regulatory requirements." (Doc. # 153 at 1.) Defendants also seek to "exclude evidence that the inventor of TVT-O violated European law in his clinical testing of the device." (Doc. # 153 at 1.) Defendants assert that this evidence is irrelevant, unduly prejudicial, and will "delay the trial" (Fed. R. Evid. 401, 403). (Doc. # 153 at 1–4.) Plaintiff responds that it is premature to exclude such a broad category of evidence (Doc. # 177 at 17). And she says that she does not intend to offer evidence regarding the TVT-O's inventor in her case-in-chief but argues that such evidence should not be precluded in case Defendants "open[] the door" during trial (Doc. # 177 at 18). Ruling on Defendants' ninth motion *in limine* is RESERVED for trial.

## X. Defendants' Tenth Motion

In their tenth motion *in limine*, Defendants seek to exclude "any surgical videos or photographs depicting the implant or explant of TVT-O or any other pelvic mesh device in other patients." (Doc. # 154 at 2.) Defendants argue that such evidence is irrelevant and unduly prejudicial (Fed. R. Evid. 401, 402, 403). (Doc. # 154 at 1.) Plaintiff states that she does not intend to use such evidence in her case-in-chief, but that, if she decides to use such evidence at trial, she will first ask the court for *in camera* review before "seeking its admission." (Doc. # 177 at 18.) Based on Plaintiff's representation, ruling on Defendants' tenth motion *in limine* is RESERVED for trial.

## XI. Defendants' Eleventh Motion

In their eleventh motion *in limine*, Defendants seek to prevent "Plaintiff's attorneys and witnesses from manipulating any TVT-O exemplar other than to show the jury what the device looks like" and to "preclud[e] the jury from touching any exemplar or taking an exemplar to the deliberation room."  (Doc. # 155 at 2.) Defendants argue that allowing witnesses or Plaintiff's counsel to "manipulat[e] any exemplar mesh in a way that results in the mesh becoming twisted, stretched, distorted, folded, or damaged . . . would give the jury a misleading impression about the mesh's physical qualities," and thus violate Federal Rule of Evidence 403.  (Doc. # 155 at 1.)  Defendants, however, do not object to Plaintiff "showing the jury what the device looks like." (Doc. # 155 at 2.)  Plaintiff responds that "the jury should be allowed to see how the mesh reacts to movement and internal forces that might be placed on it based on the movement of the body" and that the jury should not be prevented from taking an exemplar to the deliberation room since that would deny it "the ability to fully understand the nature of the device at issue." (Doc. # 177 at 19.)

The MDL court, addressing Defendants' motion to preclude "any mesh exemplar devices, in-court demonstrations[,] or testing," allowed a TVT-O "exemplar device to be used as a demonstrative aid in court" but did not permit jurors "to physically examine the device[]" or take the device "back into the jury room."

*Sutphin v. Ethicon, Inc.*, No. 2:14-CV-1379, 2020 WL 5079170, at *5 (S.D.W. Va. Aug. 27, 2020), *reconsideration denied*, No. 2:14-CV-1379, 2020 WL 5269409 (S.D.W. Va. Sept. 3, 2020).  And, dealing with other mesh products, another court found that "[p]laintiffs, their counsel, and their witnesses may not 'manipulate' the mesh such as by pulling, tugging, twisting, or folding it."  *Salinero*, 2019 WL 7753445, *6.  But that court held that "[p]laintiffs, their counsel, and their witnesses may . . . hold exemplar mesh and point to component parts while holding the mesh steady."  *Id.*

Defendants' eleventh motion *in limine* is GRANTED to the extent that Plaintiff's attorneys and witnesses may not manipulate the TVT-O exemplar by twisting, stretching, folding, pulling on it, or otherwise handling it beyond holding it still and to the extent that jurors will not be allowed to handle the exemplar or take it with them to the jury room.  Defendants' eleventh motion *in limine* is DENIED to the extent that Plaintiff will be allowed to produce a TVT-O device as an exemplar at trial and show that device to the jury.

## XII.  Defendants' Twelfth Motion

In their twelfth motion *in limine*, Defendants seek to preclude "the use of video deposition excerpts during opening statements."  (Doc. # 156 at 2.) Defendants say that such evidence "is objectionable because it allows a party to put in evidence twice.  It also violates the rule of completeness, which requires a fair

presentation of witness testimony." (Doc. # 156 at 1.) Plaintiff does not oppose Defendants' motion to the extent that the court precludes both parties from playing video clips of depositions in their openings. (Doc. # 177 at 20–21.) But she does oppose the motion to the extent Defendants seek to prevent any reference to deposition testimony excerpts, showing such excerpts to the jury, or quoting such testimony in opening statements. (Doc. # 177 at 20–21.) The MDL court previously granted Defendants' motion to the extent that neither party could play video clips of depositions during opening statements, but the court denied the motion in all other respects. *Lewis*, 2014 WL 505234, at *8; *In re C.R. Bard, Inc.*, 2013 WL 3282926, at *8.

Defendants' twelfth motion *in limine* is GRANTED to the extent that neither party will be allowed to utilize video clips of deposition testimony during their openings. It is DENIED in all other respects.

## XIII. Defendants' Thirteenth Motion

In their thirteenth motion *in limine*, Defendants seek to prevent "Plaintiff from referring to Defendants' financial condition during trial." (Doc. # 157 at 2.) In response, Plaintiff argues that "[e]vidence of a defendant's financial condition is admissible at trial and relevant to the issue of punitive damages." (Doc. # 177 at 22.) According to her complaint, Plaintiff seeks punitive damages from Defendants. (Doc. # 1 at 5.)

"[U]nder Alabama law, evidence of wealth is generally not permitted during the trial even if punitive damages are claimed by the plaintiff." *King v. CVS Caremark Corp.*, No. 1:12-CV-1715-VEH, 2015 WL 12778000, at *5 (N.D. Ala. Feb. 8, 2015). "[E]vidence of a defendant's wealth is highly prejudicial and, therefore, inadmissible." *Ray v. Ford Motor Co.*, No. 3:07-CV-175-WHA-TFM, 2011 WL 6183099, *5 (M.D. Ala. Dec. 13, 2011) (quoting *Ex parte Hsu*, 707 So. 2d 223, 225 (Ala. 1997)). "Because this court is sitting in diversity over this Alabama civil action, substantive Alabama law on the issue of admission of a defendant's wealth will apply." *Id.* And "Ala. Code § 6–11–23 (1992)[3] . . . clearly prevent[s] the jury from considering defendant's net worth in deciding what, if any, punitive damages to award." *Wilson v. Gillis Advert. Co.*, 145 F.R.D. 578, 579–80 (N.D. Ala. 1993).

As a result, Defendants' thirteenth motion *in limine* is GRANTED.

---

[3] "**In all cases wherein a verdict for punitive damages is awarded, the trial court shall, upon motion of any party, either conduct hearings or receive additional evidence, or both, concerning the amount of punitive damages**. Any relevant evidence, including but not limited to the economic impact of the verdict on the defendant or the plaintiff, the amount of compensatory damages awarded, whether or not the defendant has been guilty of the same or similar acts in the past, the nature and the extent of any effort the defendant made to remedy the wrong and the opportunity or lack of opportunity the plaintiff gave the defendant to remedy the wrong complained of shall be admissible; however, such information shall not be subject to discovery, unless otherwise discoverable, until after a verdict for punitive damages has been rendered. **After such post verdict hearing the trial court shall independently (without any presumption that the award of punitive damages is correct) reassess the nature, extent, and economic impact of such an award of punitive damages, and reduce or increase the award if appropriate in light of all the evidence**." AL ST § 6-11-23 (b) (emphasis added).

## XIV. Defendants' Fourteenth Motion

In their fourteenth motion *in limine*, Defendants seek to "preclude Plaintiff from offering evidence of mesh-related complications other than those she actually experienced." (Doc. # 158 at 3.) Defendants cite several cases where other courts have found such evidence irrelevant. (Doc. # 158 at 1–2.)

But, in one of those cases, the MDL court explicitly said that its determination was based on "West Virginia law." *Sutphin*, 2020 WL 5079170, at *5 (quoting *Tyree v. Bos. Sci. Corp.*, No. 2:12-CV-8633, 2014 WL 5445769, at *6 (S.D.W. Va. Oct. 22, 2014)). In another, the MDL court was applying Arizona law. *Bellew v. Ethicon, Inc.*, No. 2:13-CV-22473, 2014 WL 12685965, at *10 (S.D.W. Va. Nov. 20, 2014).

Neither party has briefed which Alabama statutes are implicated by this motion and how this motion should be resolved based off such statutes. While this court could follow the lead of another district court and adopt the MDL court's determinations under the law of the case doctrine, *Hosbrook v. Ethicon, Inc.*, No. 3:20-CV-88, 2021 WL 4452289, at *8 (S.D. Ohio Sept. 29, 2021), it is premature to decide this motion without the parties' arguments fully presented. As a result, ruling on Defendants' fourteenth motion *in limine* is RESERVED for trial and, if the court later deems fit, for further briefing.

**CONCLUSION**

For the reasons provided above, it is ORDERED that Defendants' motions *in limine* (Docs. # 145–58) are GRANTED in part, DENIED in part, and DEFERRED in part.

DONE this 22nd day of December, 2022.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE